UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERRY ENGEL,

            Plaintiff,                  Case No. 1:17-cv-13595
                                               District Judge Thomas L. Ludington

v.                                     Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

            Defendant.
_____/

## REPORT AND RECOMMENDATION TO GRANT PLAINTIFF'S MOTION FOR REMAND PURSUANT TO SENTENCE FOUR (DE 17), DENY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DE 21) and REMAND THIS MATTER TO THE COMMISSIONER

**I.     RECOMMENDATION**:  For the reasons that follow, it is

**RECOMMENDED** that the Court **GRANT** Plaintiff's motion for remand

pursuant to Sentence Four (DE 17), **DENY** Defendant's motion for summary

judgment (DE 21), and **REMAND** this matter to the Commissioner for

proceedings consistent with this report.

**II.     REPORT**

Plaintiff, Terry Engel, brings this action under 42 U.S.C. §§ 405(g),

1383(c)(3) for review of a final decision of the Commissioner of Social Security

("Commissioner") denying his application for disability insurance (DI) benefits.

This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's motion for remand pursuant to Sentence Four (DE 17), the Commissioner's cross-motion for summary judgment (DE 21), Plaintiff's reply (DE 22), and the administrative record (DE 11).

### A.      Background and Administrative History

Plaintiff alleges his disability began on May 1, 2014, at the age of 43.  (R. at 135.)  In his December 11, 2014 disability report, he lists several conditions (coronary artery disease (CAD) and heart attacks) that limit his ability to work.  (R. at 164.)  His application was denied on March 16, 2015.  (R. at 61-71.)

On April 2, 2015, Plaintiff requested a hearing by an Administrative Law Judge ("ALJ").  (R. at 84-85.)  On September 30, 2016, ALJ Paul W. Jones held a hearing, at which Plaintiff and a vocational expert (VE), Zach Matthews, testified. (R. at 33-60.)  ALJ Jones issued an opinion on October 27, 2016, which determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 17-32.)

On November 21, 2016, Plaintiff submitted a request for review of the hearing decision/order.  (R. at 134.)  However, on September 18, 2017, the Appeals Council denied Plaintiff's request for review.  (R. at 1-6.)  Thus, ALJ Jones's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on November 3, 2017.  (DE 1.)

**B.     Plaintiff's Medical History**

The administrative record contains approximately 214 pages of medical records, which were available to the ALJ at the time of his October 27, 2016 decision.  (R. at 32, 209-422 [Exhibits 1F – 14F].)  These materials will be discussed in detail, as necessary, below.

**C.     The Administrative Decision**

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 1, 2014, the alleged onset date.  (R. at 22.) At **Step 2**, the ALJ found that Plaintiff had the following severe impairment:  CAD with stents placement.  (*Id.* at 22-23.)  At **Step 3**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  (*Id.* at 23.)  **Between Steps 3 and 4** of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity ("RFC")[1] and determined that Plaintiff had the RFC:

---

[1] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

. . . to perform sedentary work [*i.e., exertional limitations*] . . . except:
with no exposure to hazards [*i.e., environmental limitations*].

(*Id*. at 23-26.)  At **Step 4**, the ALJ determined that Plaintiff was unable to perform

any past relevant work.  (*Id*. at 26-27.)  At **Step 5**, considering Plaintiff's age,

education, work experience, and RFC, the ALJ determined that there were jobs that

existed in significant numbers in the national economy that Plaintiff could perform.

(*Id*. at 28-29.)  The ALJ therefore concluded that Plaintiff had not been under a

disability, as defined in the Social Security Act, from May 1, 2014, through the

date of the decision.  (*Id*. at 29.)

### D.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case

under the Social Security Act, the Court "must affirm the Commissioner's decision

if it 'is supported by substantial evidence and was made pursuant to proper legal

standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009)

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see*

*also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as

to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under

this standard, "substantial evidence is defined as 'more than a scintilla of evidence

but less than a preponderance; it is such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241

(quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### E.    Analysis

Plaintiff argues that the ALJ did not properly evaluate the medical source statements of Plaintiff's treating cardiologist, James Kure, M.D., F.A.C.C.  (*See* DE 17 at 10-21.)  The Commissioner argues that the ALJ supported his findings about Plaintiff's abilities to stand, walk, and lift by "marshaling substantial evidence[.]"  (*See* DE 21 at 5-24.)

### 1.   Evaluating opinion evidence

### a.   The ALJ's assignments of weight

Within his assessment of Plaintiff's RFC, the ALJ made three specific assignments of weight to opinion evidence:

- "some weight" to Dr. Kure's letter(s) dated September 28, 2015 (R. at 369-370, 415-416), December 9, 2015 (R. at 413-414), May 20, 2016 (R. at 411-412), May 23, 2016 (R. at 421-422), June 3, 2016 (R. at 409-410), and August 2, 2016 (R. at 407-408);

- "some weight" to Dr. Kure's August 2, 2016 "Cardiac Medical Source Statement" form (R. at 402-405); and,

- "partial weight" to the March 9, 2015 physical RFC assessment of the state agency medical consultant, Reuben Henderson, D.O. (R. at 67-69).[2]

---

[2] Although the Disability Determination Explanation does not list a title or specialty, the State of Michigan's Department of Licensing and Regulatory Affairs lists Reuben Stanley Henderon as an Osteopathic Physician.  *See* https://w2.lara.state.mi.us/VAL/License/Details/43751 (last visited 1/28/2019).

(R. at 24-25.)[3]

> **b.    20 C.F.R. §§ 404.1527(c), 416.927(c) and SSRs 96-2p, 96-5p**

Plaintiff takes issue with the ALJ's application of the factors set forth in 20 C.F.R. §§ 404.1527(c), and the Commissioner argues that the ALJ's evaluation of Dr. Kure's opinion addressed them.  (DE 17 at 11, 17, 18; DE 21 at 19-21.)  This regulation provides that, regardless of the source, the SSA "will evaluate every medical opinion" that it receives.  20 C.F.R. §§ 404.1527(c), 416.927(c). Furthermore, unless the SSA gives controlling weight to a treating source's medical opinion, the SSA will consider the examining relationship, the treatment relationship, supportability, consistency, specialization and other factors "in deciding the weight we give to any medical opinion."  *Id.*

> **c.    The ALJ's treatment of Dr. Kure's August 2, 2016 Cardiac Medical Source Statement[4]**

---

[3] The Commissioner contends that Dr. Henderson's opinion is consistent with the ALJ's standing, walking and lifting assessments.  (DE 21 at 7-8.)  Plaintiff's reply suggests that Dr. Henderson's opinion is outside the scope of the issue Plaintiff brings on appeal, although Plaintiff also notes that Dr. Henderson would not have had the benefit of "the treatment records since March 2015, as well as the *two* Medical Source Statements by the cardiologist."  (DE 22 at 1-2 ¶ 1 (emphasis in original).)  The Commissioner also makes much of the ALJ's assessment of Plaintiff's allegations.  (DE 21 at 8-10.)  In the Undersigned's opinion, the sole issue presented in the instant motion is whether the ALJ properly discounted the treating cardiologist's opinion(s), and the Commissioner seems to agree.  (DE 21 at 11.)  The Court, therefore, need not opine on these side issues.

[4] Although Plaintiff's brief also references Dr. Kure's September 28, 2015 letter (R. at 369-370), Plaintiff's opinion evidence argument challenges the ALJ's

As noted above, the ALJ makes multiple assignments of weight to Dr. Kure's opinions.  First, the ALJ expressly addresses "office visit reports from September 2015, August 2016, and other times," and states:

> Although the *treating* physician, I give some weight to the assessment of Dr. Kure.  First, the determination and issues of whether claimant is disabled are reserved to the commissioner.  Second, the treatment records and the follow up office visit reports from other treating physicians do not *support* the severity of limitations as opined by Dr. Kure[.]"

(R. at 24 (emphases added).)  Second, the ALJ expressly addresses Dr. Kure's August 2, 2016 Cardiac Medical Source Statement.  (*Id.*)  The ALJ was largely accurate in characterizing this piece of evidence, although he stated that Plaintiff "could lift less than ten pounds[,]" (R. at 24-25), when the form itself does not make any indication for Plaintiff's ability to lift and carry "[l]ess than 10 lbs." but does indicate that Plaintiff can "never" lift and carry 10, 20 or 50 pounds (R. at 404).  Then, the ALJ stated:

> Again, although the treating physician, I give some weight to the assessment of Dr. Kure.  Contrary to Dr. Kure's assessment, claimant admitted at the hearing that he could lift more than ten pounds.  He testified that he could sometimes bring a bag of dog food home.  He could lift a gallon of milk.  Additionally, contrary to Dr. Kure's assessment, claimant testified that he could not stand or walk for two hours straight.  The adopted residual functional capacity adequately accommodates claimant's limitations to the extent supported by the medical evidence, including the treatment records . . . .

assignment of weight to Dr. Kure's August 2, 2016 MSS (R. at 402-405).  (DE 14-15, 18, 20.)

8

(R. at 25.)

Moreover, the ALJ supports each of these two statements with a general reference to Exhibits 2F, 9F and 12F, which are records from Shiawassee Family Medicine (R. at 221-270) and Dr. Viorca Alawa of Owosso Internal Medicine (R. at 350-367, 381-400), and the ALJ also cites these exhibits within his Step 2 discussion and elsewhere within his RFC discussion.  (*See* R. at 23-26.)  Therefore, based on the ALJ's statements and his citations to other record evidence, and having previously acknowledged that Plaintiff treated at the Regional Cardiology Associates, PLC with James Kure, M.D. (R. at 24), it is clear that the ALJ considered, to at least some degree, the existence of an examining and treatment relationship, the supportability and/or consistency factors, and Dr. Kure's specialty.  20 C.F.R. §§ 404.1527(c)(1)-(5), 416.927(c)(1)-(5).[5]

### d.    Examination of the treatment relationship factor

Still, Plaintiff claims that the "work-preclusive findings" in Dr. Kure's August 2016 medical source statement (MSS), presumably the Cardiac Medical Source Statement, were "improperly rejected for reasons that are not supported by substantial evidence."  (DE 17 at 11, 14-15.)  In addition, Plaintiff claims that the

---

[5] Lest there be any confusion, Plaintiff withdraws his argument that the ALJ "never explains in the Decision *what* part of Dr. Kure's [MSS] was afforded 'some weight'[.]"  (*See* DE 17 at 11-12 (emphasis in original), DE 21 at 11-13, and DE 22 at 3-4.)

ALJ's decision does not comply with Section 404.1527(c)(2), which concerns the treatment relationship.  (DE 17 at 11.)  More particularly, Plaintiff contends that the ALJ did not discuss the length of the treatment relationship and the frequency of examination or the nature and extent of the treatment relationship (Sections 404.1527(c)(2)(i) & (ii), 416.927(c)(2)(i) & (ii)).  (DE 17 at 17.)

Plaintiff correctly notes that Dr. Kure's "extensive treatment background" preceded his August 2, 2016 MSS.  (DE 17 at 13-15.)  The administrative record contains several records from Regional Cardiology Associates, P.L.C., dated as early as February 11, 2013 and as late as June 12, 2015, many of which are signed by Dr. Kure or on his behalf.  (*See* R. at 243, 246-247, 289-306, 321-324, 330-349.)  Dr. Kure also treated Plaintiff at Genesys Regional Medical Center during that time period, including cardiac catheterizations he performed on October 28, 2013 and February 4, 2015.  (R. at 244-245, 276-277, 312-313, 318-319.)[6]  Dr. Kure also saw Plaintiff on September 28, 2015, December 9, 2015, May 20, 2016, May 23, 2016, June 3, 2016, and August 2, 2016.  (R. at 369-370, 407-416, 421-422.)  On August 2, 2016, Dr. Kure completed the cardiac MSS. (R. at 402-405.)

---

[6] Plaintiff also underwent cardiac catheterizations on July 24, 2014, July 28, 2014, December 26, 2014, February 3, 2015, and June 8, 2015 with other physicians. (*See* R. at 283-288, 320, 348-349.)  His record of cardiac procedures is not sparse, as the ALJ acknowledges that Plaintiff "had over fifteen stent placement surgeries."  (R. at 24.)

Still, even if Plaintiff has provided an MSS from his "long-term treating cardiologist" with whom he has "a fairly extensive treatment history" (DE 17 at 19), Plaintiff has not convinced the Court that the ALJ failed to consider the treatment relationship factors.  The ALJ acknowledged that Plaintiff treated at, *inter alia*, "Regional Cardiology Associates, PLC, with James Kure, M.D." and also at Genesys Regional Medical Center, albeit with general citations to the record.  (R. at 24.)  Without specific reference to those performed by Dr. Kure, the ALJ also stated that Plaintiff "had surgical interventions of catheterizations in 2013, 2014, 2015, and 2016."  (*Id.*)   Also, without specific reference to the fact that it was performed by Dr. Kure, the ALJ expressly described Plaintiff's May 2016 "pharmacological nuclear stress test[.]"  (*Id.*; R. at 421-422.)  The ALJ having acknowledged Plaintiff's *treatment* with Dr. Kure of Regional *Cardiology* Associates and others during a period of time spanning *2013 to May 2016*, there is reason to believe that the ALJ was aware of the length, frequency, nature and/or extent of Dr. Kure's treatment relationship when he assigned "some weight" to Dr. Kure's opinions.

### e.   Examination of the supportability, consistency, and/or specialization factors

Plaintiff also takes issue with the ALJ's treatment of the supportability, consistency and specialization factors (Sections 404.1527(c)(3)-(5), 416.927(c)(3)-(5)).  (DE 17 at 18.)  To the extent Plaintiff challenges the ALJ's consideration of

the specialization factor, the ALJ acknowledged that Plaintiff was treating with Dr. Kure of Regional Cardiology Associates.  Even if the ALJ did not expressly label Dr. Kure as a cardiologist, it is hard to believe that the ALJ understood otherwise. As for the supportability and/or consistency factors, Plaintiff challenges the ALJ's characterization of his testimony regarding his exertional limitations of lifting and/or carrying and standing and/or walking.  (DE 17 at 8, 13, 15-17.)  In Plaintiff's opinion, "[n]o reasonable fact-finder would interpret the claimant's testimony as an indication of being able to perform the walking and lifting requirements of sedentary work."  (DE 17 at 17, DE 22 at 5.)  Also, he claims that Dr. Kure's September 28, 2015 letter supports the August 2, 2016 MSS.  (DE 17 at 18 n.1.)

### i.   Lifting and/or carrying (the 1st basis for discounting Dr. Kure's MSS)

On August 2, 2016, Dr. Kure opined that Plaintiff could never lift and carry 10 pounds *in a competitive work situation*; however, he made no corresponding assessment about Plaintiff's ability to lift and carry "[l]ess than 10 lbs."  (R. at 404.)  The following month, at the September 30, 2016 hearing, the ALJ asked Plaintiff whether it was true that he "can never lift ten pounds."  (R. at 55.) Plaintiff answered, "I mean, I can physically lift more than that."  (R. at 56.)  He further testified that, while he would generally leave a 25-pound bag of dog food for his kids to carry in, "if I have to, I can get it in, and then I just have to sit down

12

for a half-hour and catch my breath[.]" (*Id*.)  When asked if "it's not true that you never lift ten pounds[,]" Plaintiff responded, "I don't think so, no.  I mean, a gallon of milk weighs what, four or five pounds?  I don't know." (*Id*.)  After the ALJ suggested that a gallon of milk weighs eight pounds, Plaintiff stated, "Yeah, I can *lift* a gallon of milk." (*Id* (emphasis added).)  Then, on October 27, 2016, the ALJ stated:  "*Contrary* to Dr. Kure's assessment, claimant admitted at the hearing that he could lift more than ten pounds.  He testified that he could sometimes bring a bag of dog food home.  He could *lift* a gallon of milk." (R. at 25 (emphases added).)

Plaintiff argues that his testimony is not contrary to Dr. Kure's MSS.  The Court should agree.  Assuming a gallon of milk weighs less than 10 pounds, Plaintiff's testimony that he can lift a gallon of milk is consistent with Dr. Kure's assessments that Plaintiff can never lift *and carry* 10, 20 or 50 pounds.  Still, Dr. Kure did not opine about Plaintiff's ability to lift and carry "[l]ess than 10 lbs."  More importantly, Dr. Kure's lifting and carrying restriction was based on "a competitive work situation[,]" whereas Plaintiff testified that "get[ting] . . . in" a 25-pound bag would require him to "sit down for a half-hour and catch [his] breath," which is, quite frankly, not necessarily hard for the Court to imagine with respect to a man who has had over 15 stent placement surgeries. (R. at 56, 404.)

That the Plaintiff's testimony about lifting and/or carrying was not contrary to Dr. Kure's opinions about such abilities undermines one of the ALJ's two stated reasons for discounting Dr. Kure's cardiac MSS.  Such a misinterpretation may call into question Plaintiff's ability to perform sedentary work, which "involves *lifting no more than 10 pounds at a time* and occasionally lifting *or carrying* articles like docket files, ledgers, and small tools."  20 C.F.R. §§ 404.1567(a), 416.967(a) (emphases added).  In other words, Dr. Kure's assessment that Plaintiff can never lift and carry 10 pounds "in a competitive work situation" is not necessarily inconsistent with occasionally being able to lift and carry that much or more in other settings, like at home, where he can drag or otherwise move an item extremely short distances and then pause for 30 minutes to catch his breath.  The ALJ erred by using this supposed inconsistency between Plaintiff's testimony and Dr. Kure's opinion on lifting and/or carrying as a basis for discounting Dr. Kure's opinion.[7]  And, in light of this error by the ALJ, the evidence may not support Plaintiff being able to perform sedentary work, which involves  "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools" in a competitive work environment.  20 C.F.R. §§

---

[7] In fact, Plaintiff's January 2015 function report acknowledges difficulty with lifting, standing, walking and stair climbing, points the ALJ acknowledged when evaluating Plaintiff's credibility.  (R. at 26, 205.)

404.1567(a), 416.967(a).  Given that Dr. Kure's opinion and the definition of sedentary work are inconsistent as to lifting and/or carrying 10 pounds (and perhaps even for slightly lesser weights), and given that Dr. Kure's opinion on such limitations was improperly discounted, the substantial evidence in support of the ALJ's lifting and/or carrying limitation is unclear to this subsequent reviewer. This case should be remanded to:  (a) reweigh Dr. Kure's opinion and, particularly if the opinion is given any greater weight, to identify the maximum number of pounds that Plaintiff is capable of lifting in a competitive work environment; and, (b) submit this new information to the vocational expert for further development as necessary.[8]

### ii.   Standing and/or walking (the 2nd basis for discounting Dr. Kure's MSS)

On August 2, 2016, Dr. Kure opined that Plaintiff could stand/walk both "less than 2 hours" and "about 2 hours" total in an 8-hour working day with normal breaks.  (R. at 403.)  The following month, at the September 30, 2016 hearing, the following exchange took place between Plaintiff and the ALJ:

---

[8] Dr. Kure did no favors to anyone by failing to check any of the available boxes (*i.e.*, rarely, occasionally or frequently) with respect to his patient's ability to lift and carry less than 10 pounds in a competitive work environment.  (R. at 404.) Therefore, on remand, Plaintiff and/or the ALJ (at his/her own discretion) are invited to seek further clarification from Dr. Kure regarding Plaintiff's ability to lift and carry *less than* 10 pounds in a competitive work environment.

Q.    [Dr. Kure] says you can – in an eight-hour day, working day, you could stand or walk for about two hours.  Do you agree with Dr. [K]ure on that one?

A.    I could stand or –

Q.    Stand or walk for about two hours out of an eight-hour workday.

A.    There is no way I could walk, not for two hours *straight* even standing.

(R. at 55 (emphasis added).)  Then, on October 27, 2016, the ALJ discounted Dr. Kure's MSS, in part because "*contrary* to Dr. Kure's assessment, claimant testified that he could not stand or walk for two hours straight."  (R. at 25 (emphasis added).)

Plaintiff is correct that the ALJ "erroneously believed that Mr. Engel's testimony at the hearing contradicted his doctor's Medical Source Statement[,]" because an ability to walk "about 2 hours" total in an 8-hour workday is not *contrary* to an inability to walk "for 2 hours straight."  (DE 17 at 15, R. at 55, 403.) Stated otherwise, the ALJ "misinterpreted" Plaintiff's testimony about his ability to stand / walk, because he seems to have equated Plaintiff's testimony about walking for two hours straight with Dr. Kure's standing / walking limitation of walking for two hours total in an 8-hour workday.  (DE 22 at 4.)  Moreover, as argued by Plaintiff, it appears that Plaintiff misunderstood the question posed by the ALJ, as Plaintiff answered that he could not walk "for two hours straight . . . [,]" when the ALJ's question was phrased based on Dr. Kure's evaluation of "a cumulative of

two hours interspersed in an eight-hour workday." (R. at 55, 403; DE 17 at 15.) That the Plaintiff's testimony about standing and/or walking was not contrary to Dr. Kure's opinions about such abilities undermines the other of the ALJ's two stated reasons for discounting Dr. Kure's cardiac MSS.

Ordinarily, the Court would consider whether this misinterpretation constitutes harmless error under the Social Security Administration's definitions of "sedentary work" and "occasionally." *See Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 654 (6th Cir. 2009) ("Generally, however, we review decisions of administrative agencies for harmless error."); 20 C.F.R. §§ 404.1567(a), 416.927(a) SSR 83-10 (S.S.A. 1983). However, because Plaintiff has already identified a harmful error regarding the RFC's lifting and/or carrying limitation, the Court need not address the effect of the ALJ's error, if any, upon the RFC's standing / walking limitation. Nonetheless, given that the Court has identified a second error, the Commissioner should also correct this mistake on remand.

### f.   Summation regarding the assessment of opinion evidence

Although Plaintiff has not shown an error in the ALJ's consideration of the treatment relationship specifics (20 C.F.R. §§ 404.1527(c)(2)(i),(ii), 416.927(c)(2)(i),(ii)), and without opining as to whether the error in the ALJ's characterization of Plaintiff's testimony about standing and/or walking is harmful, Plaintiff has identified a mischaracterization of Plaintiff's testimony about lifting

and/or carrying that materially undermines one of the ALJ's two supportability and/or consistency reasons for discounting Dr. Kure's cardiac MSS (20 C.F.R. §§ 404.1527(c)(3),(4) 416.927(c)(3),(4)).  Having satisfied his burden to show a harmful error within the ALJ's treatment of the opinion evidence, *see Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997), Plaintiff is entitled to a remand and a decision that provides "good reasons . . . for the weight we give your treating source's medical opinion." 20 C.F.R. § 404.1527(c)(2).

### 2.    Assessing RFC

Plaintiff also alleges that the RFC does not consider the medical source opinions, as required by SSR 96-8p. *See also* 20 C.F.R. §§ 404.1545, 416.945. (DE 17 at 19-20.)  Social Security Ruling 96-8p provides guidance for assessing RFC in initial claims.  As to narrative discussion requirements and medical opinions, it provides in part:  "The RFC assessment must always consider and address medical source opinions.  If the RFC assessment *conflicts* with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8P (S.S.A. July 2, 1996) (emphasis added).

Plaintiff's assertion that this "was not done" refers to the ALJ's consideration of Dr. Kure's MSS and treatment records and Plaintiff's testimony, allegedly resulting in the absence of "a reasoned explanation as to why the RFC [as assessed by Dr. Kure] was not adopted[.]" (DE 17 at 20.)  The ALJ's treatment of

18

Dr. Kure's MSS has been thoroughly addressed above and requires no further discussion here.

### F.   Conclusion

Plaintiff has the burden of proof on his statements of error, and he has shown legal error that may upend the ALJ's decision.  For the foregoing reasons, it is **RECOMMENDED** that the Court **GRANT** Plaintiff's motion for remand pursuant to Sentence Four (DE 17), **DENY** Defendant's motion for summary judgment (DE 21), and **REMAND** this matter to the Commissioner for action consistent with this report.

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers*

*Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated:  February 13, 2019          s/*Anthony P. Patti*
                                   Anthony P. Patti
                                   UNITED STATES MAGISTRATE JUDGE

## Certificate of Service

I hereby certify that a copy of the foregoing document was sent to parties of record on February 13, 2019, electronically and/or by U.S. Mail.

                                   s/Michael Williams
                                   Case Manger to the
                                   Honorable Anthony P. Patti